UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25- 62707-CV-DIMITROULEAS

KELYN SANCHEZ FIGUEROA,

    Petitioner,

v.

PAM BONDI, in her official capacity as
Attorney General; KRISTI NOEM,
in her official capacity as Secretary of Homeland Security,
TODD LYONS, Acting Director U.S.
Immigration and Customs Enforcement,
JUAN AGUDELO, Acting Miami Field Office Director,
CYNTHIA LAWSON-SWAIN, Warden of
Broward Transitional Center,

    Respondents.
_____/

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; REQUIRING RESPONDENTS RELEASE PETITIONER BY FRIDAY, JANUARY 16, 2026, AT NOON

**THIS CAUSE** is before the Court on Petitioner Kelyn Sanchez Figueroa ("Petitioner")'s Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition") [DE 1], filed herein on December 31, 2025, and Petitioner's Motion for Temporary Restraining Order [DE 6], filed on December 31, 2025. The Court required an expedited response, and Respondents filed their response on January 6, 2026. *See* [DE 8]. The Court held a hearing on the Petition on January 7, 2026, and heard argument from both parties. The Court declined to rule on the Petition at that time and rescheduled the hearing for one week, until January 14, 2026. The Court again held a hearing on January 14, 2026, where Parties presented arguments. The Court is otherwise fully advised in the premises. For the following reasons, the Petition is **GRANTED**.

I.      BACKGROUND

The Petitioner, Kelyn Sanchez Figueroa, is a native and citizen of Honduras. *See* [DE 1], [DE 11-2]. Petitioner entered the United States without inspection or detention on or about October 3, 2007 and has been residing in the United States continuously for approximately eighteen (18) years. [DE 1]. On August 25, 2025, Petitioner was encountered by Immigration and Customs Enforcement and Removal Operations ("ICE-ERO") and Hendry County Sheriff's Department. On September 27, 2025, the Petitioner was transported to the local ICE sub-office for processing. *See* [DE 11-3]. That same day, DHS issued a Notice to Appear ("NTA") charging Petitioner with inadmissibility under INA § 212(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. *See* [DE 11-5]. On November 5, 2025, Petitioner had a master calendar hearing where he admitted the allegations in the NTA and conceded the charge of removal. The immigration judge sustained removability.

On December 10, 2025, Petitioner requested a custody hearing before the Immigration Judge ("IJ"). *See* [DE 11-6]. On December 19, 2025, the IJ granted Petitioner's request for release from custody under bond of $2,000. *See* [DE 11-7], The Petitioner paid the bond immediately. *See* [DE 1-2] p. 49. On December 22, 2025, DHS filed an appeal of the IJ's decision granting bond to the Board of Immigration Appeals ("BIA"). *See* [DE 11-8]. DHS's sole ground for appeal is that Petitioner is present in the U.S. without admission and therefore is an applicant for admission as defined under Section 235 (b)(2)(A) of the INA, 8 U.S.C. § 1225 (b)(2)(A). *See,* [DE 1-2] pp. 50-54; [DE 13-1].

2

Critically here, upon the Government's appeal, the Government also filed Form EOIR-43, Notice of ICE Intent to Appeal Custody Redetermination with the BIA, which automatically stayed the IJ's order granting release on bond pursuant to 8 CFR § 1003.19(i)(2). *See* [DE 13-1]. Because of this automatic, unilateral stay, Petitioner was not released despite the IJ's order. As of the date of this writing, Petitioner had been detained for over four months in ICE custody. *See* [DE 11-11]. The appeal remains pending before the BIA. and Petitioner is scheduled for a merits hearing on January 21, 2026, to review his applications for relief. *See* [DE 11-10].

Petitioner asserts the Government violated his procedural and substantive due process rights of the Fifth Amendment (counts I and II) and asserts a count of unlawful detention under 8 USC § 1225 when it is properly governed by § 1226 (count III). Petitioner seeks, *inter alia*, a writ of habeas corpus ordering Petitioner's immediate relief.

The Government argues that Petitioner is detained pursuant to § 1225(b)(2)(A) and is therefore subject to mandatory detention. Likewise, the Government's sole argument in its BIA appeal is that the IJ lacked the authority to grant a bond. Conversely, Petitioner argues that his detention is governed by § 1226, which generally allows for bond hearings for non-criminal aliens. Neither party specifically argues whether Petitioner's continued detention in light of 8 C.F.R. § 1003.19(i)(2) is constitutional, although the Court understands Petitioner's due process challenges to be directed at *inter alia* that provision, as applied to the facts here.

II.     **LEGAL STANDARD**

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates

3

that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.   DISCUSION

#### a. *Exhaustion of Administrative Remedies Would Be Futile*

Respondents argue Petitioner has failed to exhaust available administrative remedies. As an initial matter, "Section 2241 itself does not impose an exhaustion requirement," *Santiago-Lugo v. Warden*, 785 F.3d 467, 471 (11th Cir. 2015), nor do the relevant sections of the INA require Petitioner to exhaust administrative remedies before filing petitions for habeas corpus. *See Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1-2 (S.D.N.Y. Jan. 23, 2017) ("There is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus; however, such exhaustion is generally required as a prudential matter.") (collecting cases). Nor is "a § 2241 petitioner's failure to exhaust administrative remedies a jurisdictional defect." *Santiago-Lugo*, 785 F.3d at 471. Instead, the exhaustion requirement as applied to a habeas like this one is judicially imposed and serves as a prudential consideration. *Id.* at 474-75.

In this case, Petitioner *has* exhausted his remedy when he "sought review of their custody from IJs pursuant to the procedural protections they are afforded under § 1226(a) and successfully established by clear and convincing evidence that they should be released on bond." *Herrera v. Knight*, 798 F. Supp. 3d 1184, 1197 (D. Nev. 2025) (finding that petitioners did exhaust their administrative remedies); *compare Sequeira-Balmaceda v. Reno,* 79 F. Supp. 2d 1378, 1382 (N.D. Ga. 2000) (finding petitioner failed to exhaust administrative remedies prior to Immigration

Judge's ruling on motion for bond). Petitioner has taken all actions within his capacity to exhaust his remedies; it is the Government's appeal of the IJ's order and the automatic stay that now keeps Petitioner in detention and invites this habeas action. Thus, the application of exhaustion here would be "nonsensical." *Herrera*, 798 F. Supp. 3d at 1197.

Additionally, and in the alternative, exhaustion would be inadequate, futile, or would cause irreparable harm and Petitioner has already been in detention unlawfully for several months, after the IJ granted the bond. *See e.g.*, *Blandon v. Barr,* 434 F. Supp. 3d 30, 37 (W.D.N.Y. 2020) (declining to require exhaustion in light of Petitioner's already prolonged detention). Moreover, Detention would be futile because "there is no mechanism to seek administrative review of the constitutionality and application of DHS's automatic stay via C.F.R. § 1003.19(i)(2)." *Herrera*, 798 F. Supp. 3d at 1197. Accordingly, the Court proceeds to the merits of the Petition.

b. **Detention authority under §§ 1225 and 1226**

At the outset, this Court has already rejected similar arguments to those the Government makes here in granting habeas petitions. *See e.g.*, *Acosta v. Ripa, et. al.*, Case No. 25-cv-62360-WPD (S.D. Fla. Dec. 26, 2025); *Taffur v. Noem, et. al*. Case No. 25-cv-62308-WPD (S.D. Fla. Dec. 22, 2025). The Seventh Circuit has likewise rejected the Government's argument. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.,* No. 25-3050, 2025 WL 3552514, at *8 (7th Cir. Dec. 11, 2025).

Respondents contend that Petitioner's entry into the United States without inspection or admission renders him an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A), making him subject to mandatory detention and ineligible for a bond hearing. Petitioner asserts that his detention is governed by 8 U.S.C. § 1226(a), which allows for the release of noncitizens on bond.

5

The Court begins with the statutory framework. Under the INA, § 1225 and § 1226 govern the detention of noncitizens before a final order of removal. Section 1225 covers "applicants for admission" who are noncitizens "present in the United States who have not been admitted." *Puga*, 2025 WL 2938369, at *3 (cleaned up). Section 1225(a)(3) requires all applicants for admission to be inspected by an immigration officer. 8 U.S.C. § 1225(a)(3). Certain applicants for admission may be subject to removal proceedings under § 1225(b). *See id.* § 1225(b); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020) (citations omitted). "Because section 1225 is mandatory, a 'noncitizen detained under section 1225(b)(2) may be released only if he is paroled for urgent humanitarian reasons or significant public benefit.'" *Puga*, 2025 WL 2938369, at *3 (quoting *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565, at *2 (W.D. Ky. Sept. 19, 2025). Section 1225(b)(2) applies where an alien is "seeking admission" into the United States. 8 U.S.C. § 1225(b)(2)(A).

Unlike § 1225, § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1226(a) sets out a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General," and authorizes the Attorney General to "continue to detain the arrested alien[,]" release him on a "bond of at least $1,500[,]" or release him on "conditional parole[,]" 8 U.S.C. § 1226(a)(1)–(2). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that determination in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *13 (S.D.N.Y. Aug. 13,

6

2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").

Respondents contend that Petitioner qualifies as "an alien seeking admission under 8 U.S.C. § 1225(b)(2)(A)"—despite having been physically present in the United States for eighteen years before his arrest and detention—because § 1225(b)(2)(A) applies broadly to all applicants for admission. In contrast, Petitioner asserts that § 1225 applies only to noncitizens actively "seeking admission" at the border or its immediate functional equivalent.

Whether Petitioner is detained under § 1225(b)(2) or § 1226(a) is an issue of statutory interpretation that hinges on the meaning of "seeking admission." The Court thus applies traditional tools of statutory construction, beginning with the plain meaning of the statutes, to decipher the meaning of that phrase. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003); *see also Fed. Election Comm'n v. Reform Party of U.S.*, 479 F.3d 1302, 1307 (11th Cir. 2007).

To begin, the phrase "seeking admission" is ambiguous in the context of the INA. *See* 8 U.S.C. §§ 1101, 1225. Section 1225 defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" *Id*. § 1225(a)(1). And "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id*. § 1101(a)(13).

But the INA does not define "seeking admission." *Id*. § 1225(b)(2)(A); *see generally id*. § 1101. Some courts have noted that the phrase "implies action—something that is currently occurring, and . . . would most logically occur at the border upon inspection." *Lopez-Campos v.*

*Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025); *see also Rosado v. Figueroa*, No. 25-cv-02157, 2025 WL 2337099, at *11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025).  And in the context of the title of § 1225, which references "arriving" aliens, § 1225; and its function—establishing an inspection scheme for when to allow aliens into the country—the language appears susceptible to multiple interpretations.  *See Yates v. United States*, 574 U.S. 528, 537 (2015) ("The plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." (cleaned up)).

Next, the Court turns to the structure of § 1225 and § 1226, and their legislative history—which each support Petitioner's interpretation.  "Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall."  *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025). As the Supreme Court noted in *Jennings*, § 1226 "creates a default rule" that "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303.  The inclusion of a "catchall" provision in § 1226, particularly following the more specific provision in § 1225, is "likely no coincidence, but rather a way for Congress to capture noncitizens who fall outside of the specified categories."  *Pizarro Reyes*, 2025 WL 2609425, at *5; *see also Barrera*, 2025 WL 2690565, at *4 (citation omitted). The circumstances surrounding Petitioner's arrest by warrant align with § 1226(a), not § 1225(b)(2)(A).

Additionally, a recent amendment to § 1226 would be rendered meaningless under Respondents' interpretation of § 1225.  *See Puga*, 2025 WL 2938369, at *5; *Rosado*, 2025 WL 2337099, at *9.  In January 2025, the Laken Riley Act ("LRA"), Pub. L. No. 119-1, section 2, 139

8

statute 3, 3 (2025), added § 1226(c)(1)(E), which "mandates detention for noncitizens who (i) "are inadmissible under § 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), § 1182(a)(6)(C) (obtaining a visa, documents, or admission through misrepresentation or fraud), or § 1182(a)(7) (lacking valid documentation)" and (ii) "have been arrested for, charged with, or convicted of certain crimes." *Puga*, 2025 WL 2938369, at *5 (citing 8 U.S.C. § 1226(c)(1)(E)(i)–(ii)).

If Respondents' interpretation of § 1225 is correct—that the mandatory detention provision in § 1225(b)(2)(A) applies to all noncitizens present in the United States who have not been admitted—then Congress would have had no reason to enact § 1226(c)(1)(E). *See Lepe v. Andrew*s, No. 25-cv-01163, 2025 WL 2716910, at *6 (E.D. Cal. Sept. 23, 2025) (citations omitted). "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). "This principle . . . applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times." *Bilski v. Kappos*, 561 U.S. 593, 608 (2010) (citation omitted). "The Court will not find that Congress passed the LRA to perform the same work that was already covered by § 1225(b)(2)." *Puga*, 2025 WL 2938369, at *5; *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025); *see also Lepe*, 2025 WL 2716910, at *6; *Barrera*, 2025 WL 2690565, at *4; *Rosado*, 2025 WL 2337099, at *9; *Pizarro Reyes*, 2025 WL 2609425, at *5; *Gomes*, 2025 WL 1869299, at *6–7.

Respondents' reliance on the BIA's decision in *Matter of Yajure Hurtado*—rejecting the argument that a noncitizen who entered the United States without inspection and has resided here for years is not "seeking admission" under § 1225(b)(2)(A)—is misplaced. Under *Loper Bright*,

9

the Court need not defer to the BIA's interpretation of law simply because the statute is ambiguous. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

As explained, the statutory text, context, and scheme of § 1225 do not support a finding that a noncitizen is "seeking admission" when he never sought to do so. Additionally, dozens of courts that have examined the interpretation of § 1225 articulated by Respondents—particularly following the BIA's decision in *Matter of Yajure Hurtado*—have rejected their construction and adopted Petitioner's. *See, e.g., Jhon Peter Hyppolite v. Noem*, No. 25-cv-4303, 2025 WL 2829511, at *12 (E.D.N.Y. Oct. 6, 2025) (collecting cases); *Pizarro Reyes*, 2025 WL 2609425, at *7 (same); *Lepe*, 2025 WL 2716910, at *4 (same); *Barrera*, 2025 WL 2690565, at *5 (same). *But see Chavez v. Noem*, No. 25-cv-02325, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025) (citations omitted).

Having found that Petitioner is detained pursuant to § 1226(a) and that Petitioner is entitled to an individualized bond hearing, DHS's argument on appeal to the BIA the contrary is meritless. *See* [DE 13-1] (arguing only that "the Immigration Judge erred as matter of law in ordering the respondent released from DHS custody pursuant to INA § 236(a) given the respondent is an applicant for admission detained under INA § 235(b)(2)(a)." and that "the Immigration Judge lacked authority to redetermine the respondent's custody status as an applicant for admission."). Petitioner was entitled to a bond hearing and the IJ had the authority to enter an order granting the bond.

### c. *Whether Petitioners Continued Detention Violates Due Process after the IJ granted a Bond*

Petitioner argues his continued detention, post bond hearing, violates his due process rights. The Fifth Amendment protects the right to be free from deprivation of life, liberty or property without due process of law. U.S. CONST. amend. V. The Due Process Clause extends to all "persons" regardless of status, including non-citizens, whether here lawfully, unlawfully, temporarily, or permanently. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether detention violates procedural due process, courts apply the three-part test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Further, government detention violates substantive due process unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification. . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690.

As explained above, § 1226(a), not § 1225(b)(2), governs Petitioner's detention. The discretionary bond framework under § 1226(a) requires a bond hearing to make an individualized custody determination as to the applicant's risk of flight or dangerousness. On December 19, 2025, "after full consideration of the evidence presented," the IJ made such a determination, finding that Petitioner did not pose a danger to property or persons and was not a flight risk, ordering

11

Petitioner's release on an $2,000 bond, which Petitioner immediately paid. *See* [DE 11-7]. DHS appealed the decision to the Board of Immigration Appeals ("BIA") and filed a notice to automatically stay the IJ's order pursuant to 8 C.F.R. § 1003.19(i)(2), resulting in Petitioner's continued detention. *See* [DE 11-9]. This provision reads:

> "(2) Automatic stay in certain cases. In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR–43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR–43 is subject to the discretion of the Secretary."

8 C.F.R. § 1003.19(i)(2).

Where, as here, an individual bond hearing has already occurred, and the IJ has already granted release on bond, the automatic stay provision violates due process. *See e.g.*, *Merino v. Ripa*, No. 25-23845-CIV, 2025 WL 2941609, at *4 (S.D. Fla. Oct. 15, 2025) (finding that the automatic stay as applied to an appeal after the IJ granted release on bond "does not satisfy due process, because it allows for the most severe deprivation of liberty without a hint of a process to challenge such deprivation."). District courts across the country have "unanimous[ly]" held that a petitioner's continued detention after the IJ grants a bond deprives liberty without due process of law. *See J.M.P. v. Arteta, No.* 25 CIV. 4987 (DEH), 2025 WL 2984913, at *14 (S.D.N.Y. Oct. 23, 2025) (collecting 24 cases as of October, 2025); *Vargas Lopez v. Trump*, No. 8:25 Civ. 526, ––– F.Supp.3d ––––, ––––, 2025 WL 2780351, at *10 (D. Neb. Sep. 30, 2025) ("Indeed, no district court has concluded in 2025—that is, since what appears to have been a policy change within the DHS over application of 8 C.F.R. § 1003.19(i)(2)—that the regulation comports with due process."). The Court agrees with those courts that 8 C.F.R. § 1003.19(i)(2) violates due process

12

as applied here. In this case, the regulation unlawfully "permits an agency official who is also a participant in the adversarial process to unilaterally override the immigration judge's decisions," a procedure that is "anomalous in our legal system." *Günaydin v. Trump,* 784 F. Supp. 3d 1175, 1182-84 (D. Minn. 2025). Thus, the risk of erroneous deprivation of a noncitizen's liberty interest when DHS invokes the automatic stay is "extraordinarily high." *see also, e.g.*, *Vazquez v. Feeley*, No. 2:25 Civ. 1542, 2025 WL 2676082, at *19 (D. Nev. Sep. 17, 2025).

Moreover, all three *Matthews* factors weigh in favor of Petitioner. First, Petitioner's liberty—his right to freedom from Government detention—is at stake. Second, the risk of erroneously depriving him of his freedom is high as the automatic stay "permits an agency official who is also a participant in the adversarial process to unilaterally override the immigration judge's decisions". *Günaydin*, 2025 WL 1459154 at *8. And third, any government interest is in fact protected by the individualized determination by an IJ whether a noncitizen should be granted bond under § 1226. *Merino v. Ripa,* No. 25-23845-CIV, 2025 WL 2941609, at *4 (S.D. Fla. Oct. 15, 2025*) (quoting Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").

The Government's only argument at the January 14, 2026, hearing is that 1226(e) bars a district court's review of Petitioner's claims. The Court disagrees. "Section 1226(e) contains no explicit provision barring habeas review." *Demore v. Kim*, 538 U.S. 510, 517 (2003) (cited by *Abreu v. Rivera*, No. 25-20821-CIV, 2025 WL 2163051, at *1 (S.D. Fla. May 12, 2025), *report and recommendation adopted*, No. 25-20821-CIV, 2025 WL 2160163 (S.D. Fla. July 30, 2025));

13

*see also Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025) ("The government's argument that . . . 1226(e) bar[s] district court review of [petitioner's] detention-related claims is unlikely to succeed.").

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition [**DE 1**] is **GRANTED.** Respondents shall release Petitioner by Friday, **January 16, 2026 at 12:00 PM** and file a notice of compliance in the record.

2. All pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

3. The Court **RETAINS JURISDICTION** to enforce this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14th day of January, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to
Counsel of record

cc:   counsel of record